IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RONALD DAVID JONES,

    Plaintiff,

vs.                                              Case No. 4:15cv81-RH/CAS

KEITH DOWDELL, MS. CLEMEY,
JACK MCLEAN, ANN SHERMAN,
and GREG TAYLOR,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Ronald David Jones, proceeding pro se, was provided an opportunity to file a first amended complaint in this case, combining related facts and claims from other cases filed at or near the same time this case was filed which were assigned to District Judge Robert Hinkle.[1] ECF No. 13. Judge Hinkle required Mr. Jones to file an amended complaint "by

---

[1] The case numbers are: 4:15cv81; 4:15cv82; 4:15cv83; 4:15cv85; and 4:15cv90. Other cases were also filed by Mr. Jones at or near the same time this case was initiated, but have since been dismissed by Judge Hinkle, *see* case numbers 4:15cv86; 4:15cv88; 4:15cv89; 4:15cv104; 4:15cv105; 4:15cv117; and 4:15cv119, as well as by Judges Walker and Stafford. *See* case numbers 4:15cv61; 4:15cv76; 4:15cv80; 4:15cv84; 4:15cv87; and 4:15cv116.

January 13, 2016." ECF No. 13 at 4.  The amended § 1983 complaint was filed a day after the deadline.  ECF No. 14.  Despite the tardiness of the filing, Mr. Jones' amended complaint has now been reviewed.

The complaint is not on court forms as is required by the local rules of this Court.  N.D. Fla. Loc. R. 5.1(H).  The reason the prior Order directed the Clerk to send Mr. Jones "a § 1983 complaint form" was because Mr. Jones was expected to use the form.  See ECF No. 13 at 4.

The amended complaint also still does not comply with Federal Rule of Civil Procedure 10(b).  Pursuant to Rule 10(b), all statements of fact be presented "in numbered paragraphs, each limited as far as practicable to a statement of a single set of circumstances."  Fed. R. Civ. P. 10(b).  The fifteen numbered paragraphs are not so limited and cover numerous circumstances.

Mr. Jones alleges in the amended complaint that on April 22, 2014, the Mayor of Quincy, Defendant Keith Dowdell came to his home while campaigning for re-election.  ECF No. 14 at 2.  Mr. Dowdell asked whether Mr. Jones had received "a check" from the City and when Mr. Jones indicated he had not, Mr. Dowdell directed Mr. Jones to go see City Manager Mike Wade.  *Id.*  There are no other allegations presented against

Mr. Dowdell and because these plainly fail to state a claim, the amended complaint fails to assert a claim against Mr. Dowdell.

Mr. Jones alleges that he went to City Hall to inquire with Mr. Wade about the check. Mr. Wade told Plaintiff "that from what he could see" the utilities at Mr. Jones' home had been disconnected on August 10, 2007, and that if Mr. Jones did not reconnect the utilities, he had someone else do it for him. *Id.* at 3. Defendant Ann Sherman was present during that meeting and advised Mr. Jones that, although he made a small payment of $3.01, there was still a balance owed of $998.14 on the utilities account. *Id.* Mr. Jones disputes that he owed the City of Quincy that amount, asserting that Community Action had paid $775.00, plus another $50.00 after hours reconnect fee.[2] *Id.*

In June 2008, Officer Centeno contacted two City employees who, according to Mr. Jones, falsely advised that the McKelvy Street residence "was supposed to be without utility services since 2007. *Id.* at 3-4. Officer Centeno also contacted Defendant Clemey, the Customer Service Director for the City's Utilities Department, who falsely stated that the utilities for Mr. Jones' residence (1821 McKelvy Street) had been "turned off since

---

[2] Even accepting this argument from Mr. Jones, payment of $775 on a $998.14 bill leaves a $223.14 balance owed. Mr. Jones says he paid $3.01, which still leaves a balance $220.13.

August 10, 2007." *Id.* at 4.  Mr. Jones contends that Ms. Clemey's "false statement" caused him to be falsely arrested.  *Id.* at 3.  The alleged "false statement" is not explained in the complaint.

Mr. Jones alleges that on August 10, 2007, "Community Action paid to have [his] utilities turn[ed] back on and after that [his] utilities were never off . . . ."  *Id.*  However, Mr. Jones contradicts himself within the complaint by alleging that on June 6, 2008, he had a meeting with Ms. Sherman "to find out why they cut [his] utilities off" at the utility pole and he was informed that the utilities were turn off because he "had an "outstanding bill . . . for $1,481.57."  *Id.* at 4.  Mr. Jones said he "did not have that kind of money," but wanted his "lights *back on*."  *Id.* (emphasis added).  That allegation suggests they were turned off for a second time in 2008.

Ms. Sherman advised Mr. Jones that the utilities were not in his name and he could "get a new account" in his own name, but he would have to pay a deposit and have the utility box changed.  *Id.*  Mr. Jones was also informed that he "would still be responsible for paying on the outstanding bill."[3]  *Id.*  Mr. Jones says he paid "almost $1000" for an electrician, and

---

[3] Later in the amended complaint, Mr. Jones alleges that Ms. Sherman created a new account # 2146015, and his current utilities were for that account.  *Id.* at 5.  When he was able to do so, he was to make payments to former account # 2146014.  *Id.*  Mr. Jones said he "could not pay two bills, so" he only paid "account # 2146016."  *Id.*  Presumably, that is a typographical error and Mr. Jones meant to say he only paid for

new utility box.  *Id.*  Thus, despite claiming that his utilities were not turned off "since August 10, 2007," Mr. Jones alleged that he and his son "had to live without lights and water for over a month because it took time to get and electrician and permits to put up "a new box."  ECF No. 14 at 4, ¶6.  Furthermore, Mr. Jones admits that he "could not pay two bills, so" he only paid for the new utility account.  *Id.* at 5.

Mr. Jones was arrested by Sargent T. Bryant on February 21, 2012, "on a bogus charge of Theft of Utilities."  ECF No. 14 at 4.[4]  Mr. Jones says he told Sgt. Bryant that it was a mistake, his "lights were never off," and he never tampered with the meter.  *Id.*  Mr. Jones "had to bail out of jail."  *Id.*  A month later, Mr. Jones met with Defendant Jack McLean and showed him August 10, 2007, receipts from Community Action and his own payment to the City.  *Id.* at 4.  Mr. McLean questioned Ms. Sherman about the cut-off order for the property, but she said should could not find it.  *Id.* at

---

the new account.  Accordingly, Mr. Jones acknowledges in the amended complaint that he did not pay the balance owed to the City of Quincy in June 2008.

[4] Attached to the initial complaint was the warrant, notice to appear, and probable cause narrative.  ECF No. 1 at 4-7.  Those documents reveal the warrant was issued on June 24, 2008, following an investigation in June 2008 concerning 1821 McKelvy Street.  Officer Centeno confirmed the property had utilities as the meter was running, and confirmed that Mr. Jones resided on the property.  *Id.* at 4.  Ms. Clemey from the utilities department advised that the power had been turned off since August 10, 2007.  *Id.*  After confirming water and electric usage, Officer Centeno provided evidence "to the State Attorney for warrant review . . . for theft of utilities . . . ."  *Id.*

4.  The following day Mr. Jones went to court on the charge and alleges that state court Judge Kathy Garner questioned the State Attorney about proceeding on "a 5 year old warrant about utility theft." *Id.* at 5.  The State Attorney declined to prosecute the case and Mr. Jones contends that he should have been refunded his bail money. *Id.*

Mr. Jones contends that Officer Centeno did not fully investigate this case and he claims he should have been notified before an arrest warrant was sought.  ECF No. 14 at 5.  Mr. Jones says that it was not until March 2012 after he was arrested that he was told his utilities were "cut for an outstanding bill . . . ." *Id.* at 5, ¶11.  Notwithstanding, the amended complaint does not name Officer Centeno as a Defendant, nor should it because "Officer Centeno had probable cause to believe utilities were being stolen" by Mr. Jones.  *See* ECF No. 15, case # 4:14cv332-RH/CAS.

It is also alleged that Defendant Greg Taylor, a Code Enforcement officer with the City, told Mr. Jones that "he was tired of getting complaints" from neighbors about the Holy Ghost Temple. *Id.* at 6.  Mr. Taylor advised that Mr. Jones "had to be breaking" a city ordinance.  Mr. Jones makes the unsupported and conclusory allegation that Mr. Taylor and other unnamed "City officials devised a plan to have" Mr. Jones arrested for theft of utilities.

*Id.* Mr. Jones contends the City "has been harassing" him about Holy Ghost Temple and trying to shut it down. *Id.*

Mr. Jones named Greg Taylor as a Defendant, but provided no factual allegations which reveal that Mr. Taylor violated his constitutional rights. Mr. Jones makes an unsupported conclusory allegation of a plan or conspiracy to have him arrested, but there are no facts to support that claim. The amended complaint is insufficient and fails to state a claim against Mr. Taylor.

The amended complaint is also insufficient as to the claim brought against Mr. McLean. There are no facts indicating he was involved in the arrest of Mr. Jones, and no facts alleged showing he was the prosecutor who sought the warrant. The amended complaint is insufficient and should also be dismissed as to Mr. McLean.

As for the remaining claims against Ms. Clemey and Ms. Sherman, they are based upon allegations that these City officials advised that Mr. Jones had an unpaid balance with the City. Ms. Clemey's false statement to that effect, in part, led to his arrest. Mr. Jones does not explain what was false about her statement, but he admits within the complaint that he did not pay for the original utility account and the

payments he asserts were made in 2007 did not equal the balance owed. The amended complaint fails to state a claim against Ms. Clemey.

The only facts alleged concerning Ms. Sherman were that she told Mr. Jones the amount of the account balance due and suggested he could open a new account after paying another deposit, but continue to make payments toward the balance on the former account.  Mr. Jones admits he did not make payments toward that account.  The conversation between Mr. Jones and Ms. Sherman are insufficient to state a claim.

Mr. Jones has not provided facts in the amended complaint which reveal his constitutional rights were violated.  This case should be summarily dismissed and further leave to amend should not be provided. This case is frivolous.

It is respectfully **RECOMMENDED** that the amended complaint, ECF No. 14, be **DISMISSED** for failure to state a claim upon which relief may be granted and because the allegations are frivolous.

**IN CHAMBERS** at Tallahassee, Florida, on April 22, 2016.

 s/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.